UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RANDAL LONG,

   Plaintiff,

 v.

LEGGETT & PLATT,
INCORPORATED; JOHN CASE; XYZ
ENTITIES 1-100, fictitious
unknown business entities;
and J. DOES 1-100, fictitious
unknown individuals,

   Defendants.

1:16-cv-04907 (NLH/KMW)

**OPINION**

**APPEARANCES**:

ROBERT J. HAGERTY
HAGERTY & BLAND-TULL LAW LLC
MOORESTOWN TIMES SQUARE
714 EAST MAIN STREET – SUITE 2C
MOORESTOWN, NJ 08057

 *Counsel for Plaintiff.*

MICHAEL R. MILLER
MARGOLIS EDELSTEIN
THE CURTIS CENTER, SUITE 400E
170 S. INDEPENDENCE MALL W.
PHILADELPHIA, PA 19106-3337

CHRISTOPHER JAMES GILLIGAN
MARGOLIS EDELSTEIN
THE CURTIS CENTER, SUITE 400E
170 S. INDEPENDENCE MALL W.
PHILADELPHIA, PA 19106-3337

 *Counsel for Defendants.*

**HILLMAN, District Judge**

 In this employment action, Plaintiff Randal Long

("Plaintiff") alleges that his former employer, Defendant Leggett & Platt, Inc. ("Defendant") unlawfully retaliated against him for reporting sexual harassment occurring in the workplace, in violation of the New Jersey Law Against Discrimination (the "NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq*. Plaintiff also alleges that certain employees of Defendant aided and abetted in Defendant's retaliatory conduct.

Before the Court are two motions: (1) Defendant's motion for summary judgment (ECF No. 64), and (2) Plaintiff's motion to have late-served responses to requests for admissions propounded by Defendant deemed served within time. (ECF No. 67). For the reasons expressed below, Plaintiff's discovery motion – the outcome of which has no material impact on this Court's resolution of Defendant's dispositive motion - will be granted. Defendant's motion for summary judgment will also be granted, and the Clerk will be directed to close this matter.

## BACKGROUND

The Court takes its facts from the statements of material fact submitted by each party pursuant to Local Civil Rule 56.1. The material facts are largely undisputed.

Plaintiff worked with Defendant, on and off, for the better part of the last thirty years. Plaintiff first joined Defendant in 1982 and remained with Defendant for eight consecutive years before departing. (ECF No. 68 ("Pl. SOMF") at ¶¶1-3). After

2

spending four years elsewhere, Plaintiff returned to work for Defendant, quickly rising through the leadership ranks, becoming Vice President of Sales in 2005, Director of Sales in 2009, and Senior Vice President of Sales in January 2014.  (Pl. SOMF at ¶¶4-7).

In April 2014, John Case ("Case") was hired as the President of Defendant's Consumer Products Unit and became Plaintiff's direct supervisor.  (Pl. SOMF at ¶8).  Case was hired to, at least in part, restructure Defendant's sales units and cut costs where possible, including through reducing the work force.  (Pl. SOMF at ¶11).  Under Case's leadership, and in the context of this broader restructuring plan, Plaintiff was demoted in April 2015 to Regional Vice President of Sales for the Northeast Region.  (Pl. SOMF at ¶10).

In September of 2015, as further part of the restructuring plan, Case and his team decided to remove two positions from the organizational chart, one of which was occupied by Plaintiff. (Pl. SOMF at ¶¶12, 16-18).  According to Case, Plaintiff was chosen for a reduction in force because he was the highest paid regional vice president and his sales region was one of the smallest in the company.  See (Pl. SOMF at ¶14).

Conversations regarding the restructuring plan, and as a byproduct, Plaintiff's termination, continued internally through October 2015.  (Pl. SOMF at ¶12).  For example, on October 12,

3

2015, at Case's direction, Justen Moore ("Moore"), a member of Defendant's human resources department, calculated Plaintiff's severance benefits. See (Pl. SOMF at ¶¶21-22, 25). Moore explained that Plaintiff would be entitled to general severance under Defendant's severance policy, but also identified that Plaintiff would be entitled to a substantial bonus if he remained with the company until January 1, 2016. (Pl. SOMF at ¶¶33-34). Shortly thereafter, Case sent an internal email indicating (1) Plaintiff's position would be dissolved and the work absorbed by another pursuant to a force reduction, and (2) Plaintiff would be severed on or around January 1, 2016. See (Pl. SOMF at ¶12). Case decided, due in large part to Plaintiff's long tenure with Defendant, that Plaintiff's severance should wait until Plaintiff was eligible to receive his full bonus. (Pl. SOMF at ¶¶34-35).

Two months later, in December 2015, Plaintiff reported to Robert Newcombe ("Newcombe"), the Senior Vice President of Sales and Marketing, that Bobby Keen, an employee of Defendant, was sexually harassing a female employee. (Pl. SOMF at ¶¶45-47). Plaintiff reported that the female colleague confided in him that if Defendant fired her, she would file a sexual harassment lawsuit.[1] (Pl. SOMF at ¶47).

---

[1] The Court has also considered Plaintiff's counterstatement of material fact (ECF No. 71), which largely focuses on these

4

On January 6, 2016, after Plaintiff became eligible for his bonus, Case instructed that Plaintiff be paid out, terminated, and that his position be dissolved consistent with the reorganization plan. (Pl. SOMF at ¶39). That same day, Defendant fully approved Plaintiff's severance and set a termination date of January 7. (Pl. SOMF at ¶41). Because Plaintiff was out of town on vacation during that date, Defendant delayed Plaintiff's termination until January 15 so that parties could meet in person to discuss the situation. See (Pl. SOMF at ¶¶41-44). Such ended Plaintiff's long-standing employment with Defendant.

Plaintiff filed an initial complaint against Defendant on August 11, 2016 alleging retaliation and aiding and abetting under the NJLAD, along with a claim for punitive damages. That complaint was subsequently removed to this Court from the Superior Court of New Jersey. (ECF No. 1). On February 10, 2017, Defendant moved for judgment on the pleadings (ECF No. 25), and on March 6, 2017, Plaintiff cross-moved for leave to

---

sexual harassment allegations. Indeed, Plaintiff spends much of his brief in opposition to summary judgment focused on these issues. Any relevancy of such content, however, is marginal at best to this action. For reasons to be discussed further below, all that remains relevant to this Court's inquiry is that Plaintiff reported what he believed to be sexual harassment incidents to Defendant's employees during December 2015. Therefore, the Court chooses not to recite any detailed commentary about these underlying accusations regarding third parties in this Opinion.

5

amend (ECF No. 28). On September 27, 2017, this Court granted in part and denied in part Defendant's motion for judgment on the pleadings and granted Plaintiff's motion for leave to amend. (ECF No. 34). Plaintiff filed the operative first amended complaint in this action on October 11, 2017. (ECF No. 35). The first amended complaint alleges Defendant retaliated against Plaintiff in violation of the NJLAD and also contains an NJLAD aiding and abetting claim against various employees of Defendant. Defendant moved for summary judgment on December 13, 2019 (ECF No. 64), which Plaintiff opposed on January 7, 2020 (ECF No. 66). Plaintiff also cross-moved to amend its responses to requests for admission Defendant propounded (ECF No. 67), which Defendant opposed on January 14, 2020 (ECF No. 78). Both motions have been fully briefed and are ripe for adjudication.

## ANALYSIS

### I. Subject Matter Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

### II. Plaintiff's Motion To Amend Its Request For Admission ("RFA") Responses Will Be Granted, But Only Because That Motion Has No Material Impact On The Court's Resolution Of Defendant's Motion For Summary Judgment

The Court begins, unfortunately, with a foray into otherwise straightforward discovery rules. Indeed, courts, including this one, loathe policing basic discovery disputes

6

that should otherwise be easily resolved by the parties without the Court's intervention.

The facts underlying the parties' discovery dispute are hardly contested. On March 28, 2018, Defendant propounded RFAs upon Plaintiff pursuant to Rule 36 of the Federal Rules of Civil Procedure. (ECF No. 72 at ¶3). Plaintiff admits that, on April 27, 2018 – thirty days after the RFAs were propounded – he failed to serve responses on Defendant. (ECF No. 72 at ¶4). After the deadline to respond had passed, on May 1, 2018, Plaintiff sought an extension of time within which to serve responses, which Defendant graciously agreed to that same day. (ECF No. 72 at ¶¶4-6). Defendant agreed to accept responses served on or before May 8, 2018. (ECF No. 72 at ¶6).

May 8th came to pass without Plaintiff serving his responses or otherwise communicating with Defendant's counsel. Instead, Plaintiff waited until May 14, 2018 to serve responses. (ECF No. 72 at ¶8). Defendant avers that, because Plaintiff failed to timely serve responses, the RFAs are deemed admitted. Plaintiff disagrees and asks this Court to retroactively forgive his tardiness.

The Federal Rules of Civil Procedure are unquestionably clear on this matter. Any party may serve RFAs on another. Fed. R. Civ. P. 36(a)(1). Responses to those RFAs must be served upon the propounding party "within 30 days after being

7

served" unless the parties stipulate to an alternative schedule. Fed. R. Civ. P. 36(a)(3). Any matter not responded to in a timely fashion is deemed admitted. Fed. R. Civ. P. 36(a)(3). Plaintiff admits he failed to serve timely responses on two occasions: first, Plaintiff missed the initial thirty-day deadline, and second, Plaintiff missed the extended deadline Defendant was gracious enough to afford him. Such results in the RFAs being deemed admitted.

Nonetheless, Plaintiff argues that his tardy responses should be accepted to promote fairness in this action. (ECF No. 66-1 at 19-20). Rule 36(b) provides that courts may permit admissions to be withdrawn or amended "if it would promote the presentation of the merits of the action" and if the court is persuaded that withdrawal would not prejudice the requesting party in maintaining or defending the actions on the merits. Fed. R. Civ. P. 36(b). Plaintiff has done little to satisfy this Court that the requirements of Rule 36(b) have been met.

Nonetheless, under the circumstances, and finding that granting Plaintiff's motion to have his RFAs deemed served within time will not materially alter the outcome of Defendant's motion for summary judgment, the Court will grant Plaintiff's motion, but with this important reminder of the goal and dictates of the rules of procedure. Congress has decided that failure to timely serve responses to RFAs shall be met with

strict penalty, namely, those requests being deemed admitted; this Court is not in the business of second-guessing Congress' clear directives.  Had Plaintiff's delays materially impacted the outcome of Defendant's motion, Plaintiff can be assured its motion would have been denied and it would have been left with the consequences of the lack of timely compliance.

### III. Legal Standard – Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by []showing[]--that is, pointing out to the district court—-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'"

10

Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

**IV. Defendant's Motion For Summary Judgment**

The NJLAD prohibits retaliation against an employee because that employee "has opposed any practices or acts forbidden under [the NJLAD] or because that person has filed a complaint, testified or assisted in any proceeding under [the NJLAD]." Nuness v. Simon & Schuster, Inc, 221 F. Supp. 3d 596, 605 (D.N.J. 2016) (quoting N.J. Stat. Ann. § 10:5-12(d)). To state a prima facie case for retaliation under the NJLAD, Plaintiff must show that he (1) engaged in protected activity, (2) suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the adverse employment action. Id. (quoting Sanchez v. SunGard Availability Servs. LP, 362 Fed. Appx. 283, 287 (3d Cir. 2010)). Once a plaintiff establishes a prima facie case of retaliation, the

11

defendants must "articulate a legitimate, non-retaliatory reason for the decision." Young v. Hobart W. Grp., 897 A.2d 1063, 1072–73 (N.J. Super. Ct. App. Div. 2005) (quoting Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995)).  Next, "the plaintiff must come forward with evidence of a discriminatory motive of the employer, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive." Id. (quoting Romano, 665 A.2d at 1142).

  A. Plaintiff May State A Prima Facie Case For NJLAD Retaliation

The Court hesitates to find Plaintiff states a prima facie case for retaliation for the reasons to follow, but nonetheless, out of an abundance of caution, will conduct a complete NJLAD analysis.

  1. Plaintiff May Have Engaged In A Protected Activity

Reporting to an employer what an employee objectively and reasonably perceives to be unlawful discriminatory behavior, and then being retaliated against for doing so, constitutes a violation of the NJLAD's prohibition against retaliation. See Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193–94 (3d Cir. 2015) (quoting Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276, 129 S. Ct. 846, 851, 172 L. Ed. 2d 650 (2009)) ("When an employee communicates to her

employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's opposition to the activity.'"); Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008) (quoting Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006), as amended (Sept. 13, 2006)).  In determining whether a plaintiff was opposing discrimination or was otherwise engaging in a separate activity, courts "look to the message being conveyed[.]"  Moore, 461 F.3d at 343 (quoting Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006)).

It remains unclear whether Plaintiff was engaged in a protected activity.  On the one hand, Plaintiff's activity could be viewed as alerting his employer to potential sexual harassment occurring within the company.  Such would be a protected activity.  Smith v. Exxon Mobil Corp., 374 F. Supp. 2d 406, 419 (D.N.J. 2005) ("[Plaintiff] engaged in a protected activity when she turned to various levels of management with complaints regarding . . . sexual harassment."); Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 424 (D.N.J. 2003) ("Plaintiff . . . clearly engaged in protected activity . . . when she made complaints about Defendant['s] . . . alleged sexual harassment"); Michaels v. BJ's Wholesale Club, Inc., No. 11-5657, 2014 WL 2805098, at *6 (D.N.J. June 19, 2014) (quoting

Fabrikant v. Arthur J. Gallagher & Co., A-5995-05T1, 2008 WL 281690, at *7 (N.J. Super. Ct. App. Div. Feb. 4, 2008)) ("Protected activity can include a plaintiff[']s complaints concerning allegations of discrimination against herself or others . . . .").

On the other hand, the tenor of Plaintiff's message appears less akin to reporting sexual misconduct and more akin to alerting his employer to potential litigation risks. Indeed, Plaintiff reported that an employee was threatening to sue only if she was terminated. Reporting the risk of potential litigation, of itself, would not qualify as a protected activity.

Because the meaning of Plaintiff's words and the message he intended to convey remains in question, the Court cannot determine definitively from the record before it whether Plaintiff's activity is of the protected type. As such, the analysis must continue.

### 2. Plaintiff Suffered An Adverse Employment Action

"Under the LAD, an 'adverse employment action' is one 'sufficiently severe or pervasive to have altered plaintiff's conditions of employment in an important and material manner.'" Ivan v. County of Middlesex, 595 F. Supp. 2d 425, 470 (D.N.J. 2009) (quoting El-Siofi v. St. Peter's Univ. Hosp., 887 A.2d 1170, 1188 (N.J. Super. Ct. App. Div. 2005)). Termination from

employment is the quintessential adverse employment action. Because Plaintiff was fired, he satisfies this element of the analysis.

> 3. <u>While Plaintiff Was Fired Shortly After Reporting Sexual Harassment Activity, The Circumstances Suggest There Was No Causal Connection Between His Reporting Of Sexual Harassment And His Termination</u>

"In determining whether a plaintiff has produced prima facie evidence of causation, the decisions of our Court of Appeals have generally focused on two indicia: timing and evidence of ongoing antagonism." <u>Hargrave</u>, 262 F. Supp. 2d at 424.

> Although the timing of an employer's adverse employment action will, by itself, rarely provide prima facie evidence that disciplinary action is attributable to retaliatory motives, the temporal proximity between an employer's action and an employee's protected activity may permit an inference of causation where the relatively short interval between the two is "unusually suggestive" of retaliation.

<u>Id.</u> (footnote omitted). "In cases where the timing of an employer's adverse action is, by itself, inconclusive, plaintiff[s] may demonstrate a causal link by producing circumstantial evidence of 'ongoing antagonism' or 'retaliatory animus' in the intervening period between [t]he[i]r complaints and the adverse action." <u>Id.</u> at 424-25 (quoting <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997); <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 921 (3d Cir. 1997)). Further, "the Court of Appeals has not excluded the possibility

15

that the timing of an employer's action, together with 'other types of circumstantial evidence,' may also suffice to support an inference of causation." Id. at 425. "In short, the case law has set forth few limits on the type of evidence which might suffice to establish a prima facie showing of causation." Id.

In September of 2015, Case decided to remove two positions from the organizational chart, one of which was Plaintiff's. (Pl. SOMF at ¶12). This decision came as part of an organizational restructuring and work force reduction plan. Plaintiff admits as much. See (Pl. SOMF at ¶¶21-22, 25). Discussions percolated internally until a termination date was agreed upon. Months after those decisions had been made, in December 2015, Plaintiff informed Newcombe that a female employee would sue if fired because she allegedly faced sexual harassment while at work. (Pl. SOMF at ¶¶45-47). Plaintiff was terminated from employment in January 2016, consistent with Defendant's long-standing plan. While his termination was made in close temporal proximity to his reporting of potential sexual harassment, there appears to be little, if any connection between Plaintiff's reporting and his termination. Indeed, Plaintiff concedes Defendant was planning to lay him off as early as 2015.

Additionally, Plaintiff has not identified evidence suggesting ongoing animus towards him. Instead, the undisputed

16

facts suggest the opposite. Defendant delayed Plaintiff's termination on two occasions, extending two separate courtesies: (1) permitting Plaintiff to claim a full bonus and (2) delaying Plaintiff's termination until he returned from vacation. These facts hardly suggest Plaintiff was treated unfairly.

As such, this Court finds Plaintiff unable to satisfy this final element of a prima facie showing. Even assuming, however, that Plaintiff states a prima facie case of retaliation, Plaintiff's claim would still fail.

### B. Defendant Has Articulated A Legitimate, Non-Retaliatory Reason For Terminating Plaintiff and Plaintiff Has Not Presented Evidence Proving Defendant's Reason Is Pretextual

Defendant says it terminated Plaintiff as part of a force reduction; the record fully supports that assertion. Plaintiff does not identify sufficient evidence to suggest Defendant's stated basis was pretextual. Instead, Plaintiff recognizes that he was on the proverbial chopping block for nearly a year before he was fired, and months before he ever reported potential sexual harassment to Defendant. Moreover, the record establishes Defendant showed no animosity towards Plaintiff. Where Defendant could have initiated Plaintiff's termination in 2015, it waited until 2016 to afford Plaintiff an opportunity to earn his full bonus. In light of these facts, Defendant is entitled to summary judgment. See Wood v. Univ. of Pittsburgh,

395 F. App'x 810, 815-16 (3d Cir. 2010) (affirming district court's grant of summary judgment on a Title VII retaliation claim where defendant established it fired plaintiff as part of a workforce reduction and where plaintiff could not identify evidence suggesting defendant's reason was pretextual).

### C. Because Plaintiff's Retaliation Claim Fails, So Too Must Plaintiff's Aiding and Abetting Claim

The "LAD holds individuals liable for their actions in aiding and abetting violations of an individual's rights rather than simply imputing general liability to the employer for the employees' acts." Lopez-Arenas v. Zisa, No. 10-2668, 2012 WL 933251, at *10 (D.N.J. Mar. 19, 2012). There are two forms of aiding and abetting under NJLAD: an active form and a passive form. Id. To establish the active form, three elements must be proven:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.

Hurley v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999). To establish the passive form, "a plaintiff must show that the supervisor holds a duty to act against harassment and yet remains deliberately indifferent to its existence." Lopez-Arenas, 2012 WL 933251, at *10. Under the passive theory, the employer remains the principal violator for its failure to

prevent or redress the harassing actions of its supervisors. Id. (citations omitted).

Having found Defendant did not commit an actionable violation or "wrongful act," its employees cannot be found liable for aiding and abetting. See Hurley, 174 F.3d at 127; Lopez-Arenas, 2012 WL 933251, at *10.

## CONCLUSION

For the reasons expressed above, Plaintiff's motion to have its RFA responses deemed served within time (ECF No. 67) will be granted and Defendant's motion for summary judgment (ECF No. 64) will be granted. Such resolves this matter in its entirety.

An appropriate Order will be entered.


Date: July 27, 2020                s/ Noel L. Hillman_____
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.